**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DR. MAHMOUD ABOUELENEIN,

        Plaintiff,

v.

                                 Case No. 18-2670-DDC-JPO

KANSAS CITY KANSAS COMMUNITY
COLLEGE, THE BOARD OF TRUSTEES OF
KANSAS CITY KANSAS COMMUNITY
COLLEGE, and DR. JACQUELINE VIETTI,

        Defendants.

_____

<u>**MEMORANDUM AND ORDER**</u>

Before the court is defendants Kansas City Kansas Community College ("KCKCC"), the

Board of Trustees of Kansas City Kansas Community College (the "Board"), and Dr. Jacqueline

Vietti's ("Dr. Vietti," and together with KCKCC and the Board, "defendants") Motion for Partial

Dismissal (Doc. 19). Defendants move under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) to dismiss certain claims asserted against them by plaintiff Dr. Mahmoud Abouelenein.

Plaintiff has responded (Doc. 25), and defendants have replied (Doc. 31). For reasons explained

below, the court grants in part and denies in part defendants' Motion for Partial Dismissal.

I.       **Factual Background**

The court takes the following facts from plaintiff's First Amended Complaint (Doc. 4-1)

and views them in the light most favorable to plaintiff. *S.E.C. v. Shields*, 744 F.3d 633, 640

(10th Cir. 2014) (explaining that court must "accept as true all well-pleaded factual allegations in

the complaint and view them in the light most favorable to the [plaintiff]" (citation and internal

quotation marks omitted)).

Plaintiff is an Egyptian-born, Muslim male.  KCKCC employed plaintiff from 2005 through April 4, 2018.  He was hired in 2005 as Director of Information Systems.  In 2007, plaintiff was promoted to Dean of Information Services/Chief Information Officer.  Since 2015, in plaintiff's role as Chief Information Officer, he reported to and was supervised by the President of KCKCC.  He was also a member of the President's Cabinet, the executive management team for KCKCC.  Plaintiff never received a negative performance review and was never the subject of any disciplinary action during his tenure at KCKCC.  And, he received annual merit bonuses each year.

In 2016, KCKCC offered Chief Officer-level employees, including plaintiff, employment contracts.  Plaintiff's employment contract (the "Employment Contract") had an effective date of July 1, 2016 and provided for a term of employment through June 30, 2019.  It was signed by the then-current President of KCKCC, Dr. Dorris Givens.  And, the Employment Contract provided terms and conditions governing plaintiff's compensation, health benefits, vacation leave, and various other benefits.  Plaintiff alleges that the Board's policy was for the Board to hire the President, but then delegate responsibility for hiring all other employees to the President.  The President then "ensure[s] that personnel policies, practices, and employment agreements are implemented and followed."  Doc. 4-1 at 7 (Compl. ¶ 43).  Dr. Vietti became KCKCC's President on July 19, 2017 and served in this role until June 30, 2018.  During this time, she was plaintiff's supervisor.  At some point, during a meeting with Dr. Vietti, Dr. Vietti told plaintiff he would continue to receive certain phone allowance and car allowance benefits because they were specified in the Employment Contract, even though other employees without contracts were losing these benefits.

In July and August of 2017, current and former members of the Board and KCKCC staff solicited anonymous complaints that made false and unsupported allegations about plaintiff and then-President Dr. Givens.  These Board members and employees did this in an attempt to remove plaintiff and Dr. Givens from their current positions.  The complaints involved allegations of criminal conduct and sparked an investigation.  Plaintiff had to hire an attorney to represent him.  Plaintiff requested copies of the complaints, but never received them.  He contends "the allegations have been shown to be wholly meritless and no action has been taken as a result of the investigation." *Id.* at 8 (Compl. ¶ 49).  But, despite plaintiff's requests, he has not received the resolution of the investigation or any report exonerating him.

Throughout plaintiff's employment at KCKCC, he "was routinely the target of inappropriate and disrespectful comments and was treated differently from other employees." *Id.* at 7 (Compl. ¶ 44).  But plaintiff did not report many of these experiences for fear of retaliation by KCKCC.  On September 8, 2017, he did make a written complaint to KCKCC's human resources department about discriminatory treatment.

In this human resources complaint, plaintiff provided examples of how he, "[a]s the only Muslim and person of Middle Eastern origin," was treated differently from his colleagues. *Id.* at 8 (Compl. ¶ 52).  First, he described how he was investigated for spying on other employees based on anonymous, untrue, and unsupported allegations.  He explained that no evidence supported these allegations and they were made to attack his integrity.  But, even after cooperating with the investigation, the Acting President took away certain of plaintiff's job responsibilities based on these allegations.  Next, he described a number of issues with the Vice President of Academic Affairs, Dr. Ed Kremer.  Dr. Kremer told him to rub goat urine on his head for hair growth.  In the complaint, plaintiff stated that this remark was "clearly based on

[his] religious and ethnic background." *Id.* at 9. Plaintiff also asked Dr. Kremer to refer to him as "Dr. Baz" when addressing him in public forums where Dr. Kremer addressed other colleagues with doctoral degrees as "Dr." Plaintiff believed Dr. Kremer was not affording him this same respect because his last name was not of English origin. After asking Dr. Kremer to refer to him as "Dr.," a complaint was filed accusing plaintiff of sexism and plaintiff was investigated. Dr. Kremer also attempted to provide Christian counseling to plaintiff when plaintiff was going through a divorce, despite knowing he was Muslim. Plaintiff explained that, during these baseless investigations, he began to have job responsibilities taken away, while other non-Muslim/non-Egyptian employees were not reprimanded.

After filing the human resources complaint, plaintiff continued to be subjected to discriminatory and retaliatory treatment. His job duties continued to be reduced and entire departments that previously had reported to plaintiff were taken away. KCKCC then declared the Employment Contract to be invalid. KCKCC claimed it was unaware of the Employment Contract, notwithstanding the then-President's signature on the agreement and the fact that plaintiff and KCKCC had been operating under its terms since its execution. KCKCC even accused plaintiff of intentionally misappropriating college funds by agreeing to the Employment Contract, even though similar contracts were offered to all senior-level administrators. KCKCC's attorney has threatened plaintiff with a criminal investigation and legal action to recoup some of his compensation and benefits received under the Employment Contract. KCKCC also took away plaintiff's health benefits and failed to provide certain salary and other benefits agreed to in the Employment Contract.

On March 29, 2018, plaintiff notified KCKCC that he intended to file an EEOC charge on April 4, 2018. On April 3, 2018, KCKCC scheduled and held a special meeting of the Board.

That evening, the Board voted and declared their intention to terminate plaintiff's employment. The next day, KCKCC's Chief Financial Officer—Michael Beach—and its Chief Human Resources Officer—Christina McGee—informed plaintiff that he was being terminated for failing to comply with KCKCC's policies, rules, and regulations or laws applicable to KCKCC, and for "other personal conduct that is detrimental to the interests of the College." Doc. 4-1 at 11 (Compl. ¶ 65). But, to date and despite his many requests, plaintiff has not been told what policies he failed to comply with or what conduct KCKCC deemed detrimental. He believes he was terminated without cause. And, plaintiff's final paycheck was significantly below what he was entitled to under the terms of the Employment Contract. He alleges KCKCC still owes him $54,886.63, plus applicable penalties under the Kansas Wage Payment Act.

On April 5, 2018, plaintiff filed a charge of discrimination against KCKCC with the Equal Employment Opportunity Commission ("EEOC"), asserting discrimination based on religion and national origin and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"). The charge also was forwarded to and filed with the Kansas Human Rights Commission ("KHRC"). Plaintiff requested a right to sue letter and the EEOC forwarded this request to the Department of Justice. Plaintiff then received the Notice of Right to Sue from the Department of Justice and, on December 6, 2018, filed this lawsuit.

Plaintiff asserts eight counts against defendants: (1) religious discrimination violating Title VII; (2) national origin discrimination violating Title VII; (3) retaliation violating Title VII; (4) breach of contract; (5) negligence; (6) estoppel; (7) unjust enrichment; and (8) Kansas Wage Payment Act violation, specifically for unpaid earned wages under Kan. Stat. Ann. § 44-315.

## II.     Legal Standards

As explained in more detail below, defendants move to dismiss all claims asserted against Dr. Vietti, either because plaintiff failed to exhaust administrative remedies, failed to provide required notice, or failed to state a cognizable claim. And, they move to dismiss certain claims asserted against the Board and KCKCC, claiming that plaintiff failed to exhaust administrative remedies or failed to provide required notice. Defendants raise these arguments for dismissal under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and Federal Rule of Civil Procedure 12(b)(6) (fail to state a claim upon which relief can be granted).

### A.     Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. §§ 1331–32. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Kinney v. Blue Dot Servs.*, 505 F. App'x 812, 814 (10th Cir. 2012) (explaining that the "court may not assume that a plaintiff can establish subject matter jurisdiction; it is the plaintiff's burden to prove it").

Generally, a Rule 12(b)(1) motion to dismiss consists of either a facial attack or a factual attack. *Davenport v. Wal-Mart Stores, Inc.*, No. 14-2124-JAR-JPO, 2014 WL 3361729, at *1 (D. Kan. July 9, 2014). The Tenth Circuit has explained the difference between the two:

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citations omitted).

### B.  Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Id.* But this requirement does not extend to every assertion made in a complaint. The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)). Essentially, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). This plausibility standard reflects the requirement in Federal Rule of Civil Procedure 8 that pleadings must provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012).

When evaluating a motion to dismiss under Rule 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations

omitted).  Also, a court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

## III.     Analysis

Defendants move to dismiss all claims asserted against Dr. Vietti, claiming that plaintiff failed to exhaust administrative remedies, failed to provide required notice, or failed to state a cognizable claim.  And, they move to dismiss certain claims asserted against the Board, claiming plaintiff failed to exhaust administrative remedies, and against the Board and KCKCC, asserting plaintiff failed to provide required notice.  Specifically, defendants move to dismiss Counts I through III of plaintiff's Amended Complaint—they assert claims for Title VII violations for religious discrimination, national origin discrimination, and retaliation—to the extent these claims are asserted against the Board and Dr. Vietti, arguing plaintiff failed to exhaust his administrative remedies.  Defendants also argue the court should dismiss these same claims against Dr. Vietti because she is not subject to individual liability under Title VII.  Next, defendants move to dismiss counts IV, VI, and VII—they assert breach of contract, estoppel, and unjust enrichment claims related to the Employment Contract—to the extent these claims are asserted against Dr. Vietti.  Plaintiff asserts that Dr. Vietti was not a party to the Employment Contract.  For Count V—the negligence claim—defendants move for dismissal in its entirety for all defendants, arguing plaintiff failed to satisfy a mandatory notice requirement.  And, defendants argue the court should dismiss the negligence claim against Dr. Vietti because she was not a party to the Employment Contract and had no duty to plaintiff.  Finally, defendants move to dismiss Count VIII—a Kansas Wage Payment Act claim—to the extent plaintiff asserts

it against Dr. Vietti because she is not an employer subject to liability under that Act. The court addresses each argument for dismissal, in turn, below.

### A. Counts I-III (Title VII Religious Discrimination, National Origin Discrimination, and Retaliation) as Asserted Against the Board and Dr. Vietti

Title VII prohibits an employer from discriminating against an employee because of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against a person who opposes an unlawful employment practice or asserts rights under the statute. 42 U.S.C. § 2000e-3(a). Defendants move to dismiss Counts I through III of plaintiff's Amended Complaint against Dr. Vietti for failing to state a claim, and against Dr. Vietti and the Board for failing to exhaust administrative remedies.

#### i. Dr. Vietti

Defendants move to dismiss all three Title VII claims against Dr. Vietti, arguing these claims should be dismissed because Dr. Vietti is not subject to individual liability under Title VII. Doc. 20 at 5–6 (citing Tenth Circuit precedent holding individual capacity suits are inappropriate under Title VII); *see also Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate."); *Joritz v. Univ. of Kan.*, No. 17-4002-SAC, 2018 WL 4906306, at *2 (D. Kan. Sept. 11, 2018) (explaining an individual could be sued under Title VII in her official capacity "as an alternative means of naming the individual's employer[,]" but this is duplicative where plaintiff already has named the employer directly). Plaintiff's Response concedes that he isn't asserting the Title VII claims against Dr. Vietti individually. Doc. 25 at 12. The court thus grants defendants' request to dismiss Count I (Religious Discrimination), Count II (National Origin Discrimination), and Count III (Retaliation), as asserted against Dr.

Vietti individually. Consequently, the next section analyzes defendants' failure to exhaust argument for the Board alone.

### ii. The Board

Title VII requires a person who believes he has been discriminated against to file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Notice of the charge "shall be served upon the person against whom such charge is made" within 10 days after filing. *Id.* Title VII instructs certain complainants to file their charge first with a state or local agency. *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (citing 42 U.S.C. § 2000e-5(c)). Then, the complainant "has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended . . . to file a charge with the EEOC." *Id.* (citing 42 U.S.C. § 2000e-5(e)(1)). Or, where the state or local agency has a "'worksharing' agreement with the EEOC," the charge can be filed with one agency and shared with the other. *Id.* (citing 29 C.F.R. § 1601.13).

The complainant must file this charge with the EEOC or an authorized state agency (in Kansas, the KHRC) and receive a right-to-sue letter based on the charge before bringing an action in court. *Fort Bend*, 139 S. Ct. at 1846–47 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)); *Leo v. Garmin Int'l*, No. 09-cv-2139-KHV, 2009 WL 3122502, at *4 (D. Kan. Sept. 24, 2009). This rule requiring exhaustion of administrative remedies has two principal purposes: (1) "to give notice of the alleged violation to the charged party;" and (2) "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (citations and internal quotation marks omitted); *see also Lincoln v. BNSF Ry. Co.*, 900 F.3d

1166, 1181 (10th Cir. 2018). And, to promote the purposes of the exhaustion rule, "plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Smith*, 904 F.3d at 1164 (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)); *see also Lincoln*, 900 F.3d at 1181 ("'A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter.'" (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1994 (10th Cir. 2004))).

EEOC charges are liberally construed because they "are traditionally filed by non-attorneys." *Smith*, 904 F.3d at 1166; *see also Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) ("We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."). Although courts "'liberally construe' the plaintiff's allegations in the EEOC charge, 'the *charge* must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]'" *Id.* at 1164 (quoting *Jones*, 502 F.3d at 1186). "The ultimate question is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Id.* at 1164–65 (citations and internal quotation marks omitted).

Defendants move to dismiss the Title VII claims against the Board, arguing plaintiff failed to exhaust his administrative remedies. Doc. 20 at 4–5. Plaintiff's EEOC Charge of Discrimination named KCKCC as the employer who discriminated against plaintiff. Doc. 4-1 at 29. And, defendants contend, plaintiff only references the Board in passing in the summary of particulars attached to the EEOC charge. Defendants highlight that plaintiff concludes the

summary by identifying KCKCC as the only discriminating party. *See* Doc. 4-1 at 32 ("I believe that KCKCC discriminated against me because of my religion and national origin and KCKCC retaliated against me for complaining, in violation of Title VII . . . ."). Because plaintiff did not list the Board as a party to the EEOC charge, defendants argue plaintiff did not satisfy Title VII's statutory prerequisites to bring suit against the Board. They thus move to dismiss because plaintiff failed to exhaust administrative remedies, citing Federal Rule of Civil Procedure 12(b)(1) and contending the court lacks subject matter jurisdiction.

Plaintiff responds and first contends defendants' argument fails because the failure to exhaust administrative remedies is not a jurisdictional prerequisite, and cannot be raised under Rule 12(b)(1). Plaintiff is correct. Both Supreme Court and Tenth Circuit precedent hold that failing to exhaust administrative remedies under Title VII is not a jurisdictional prerequisite to suit. *Fort Bend*, 139 S. Ct. at 1846, 1851; *Lincoln*, 900 F.3d at 1185. Instead, failing to exhaust administrative remedies is an affirmative defense. *Fort Bend*, 139 S. Ct. at 1851–52; *Lincoln*, 900 F.3d at 1185–86. This affirmative defense—if timely raised—can be dispositive. *Fort Bend*, 139 S.C. at 1851–52. In their Reply, defendants recharacterize their argument as a motion to dismiss for failing to state a claim under Rule 12(b)(6). Doc. 31 at 2.

The "distinction between a jurisdictional requirement and an affirmative defense is immaterial" in a case where a party has "'properly presented' [the issue] for decision." *Smith*, 904 F.3d at 1164 (quoting *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007)). Defendants maintain that plaintiff did not satisfy the mandatory statutory prerequisites because he did not name the Board as a party to the EEOC charge. Doc. 31 at 2. Defendants contend that plaintiff, by merely mentioning the Board in his summary

attached to the EEOC charge, did not provide the Board "the requisite notice to allow them to participate in the investigation of the charge and conciliation as an individual entity." *Id.* at 3.

Plaintiff disagrees. Plaintiff argues at the motion to dismiss phase he only needs to allege that defendants are employers under Title VII, he worked for defendants during the relevant time, he has exhausted administrative remedies, and he has received a right to sue letter. Doc. 25 at 6. He asserts the EEOC charge should be liberally construed. *Id.* And, while plaintiff concedes he didn't name the Board on the cover page to the charge, plaintiff contends the summary attached to the charge provided the Board with requisite notice. *Id.* at 6–7. Plaintiff contends, "[a]t a minimum" he should be allowed to conduct discovery to determine what notice the Board had about his claims and the Board's role in the discriminatory conduct and retaliation. *Id.* at 8.

Generally, a party must be named in the charge of discrimination for a court to consider a claim against that party. *Robles v. Amarr Garage Doors*, No. 11-2707-JAR-DJW, 2012 WL 2359423, at *4 (D. Kan. June 20, 2012). But, "omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII." *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980). Four factors drive the governing analysis determining whether an unnamed party may be included in an subsequent lawsuit: (1) whether the unnamed party's role could be ascertained by the complainant through "reasonable effort" when the EEOC complaint was filed; (2) whether the interests of the named and unnamed parties are "so similar . . . that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;" (3) whether the unnamed party's "absence from the EEOC proceedings resulted in actual prejudice" to the unnamed party's interests; and (4) "whether the unnamed party has in

some way represented to the complainant that its relationship with the complainant is to be through the named party." *Id.* at 1311–12; *see also Robles*, 2012 WL 2359423, at *4 ("A court can only consider a claim against an unnamed party administratively exhausted in limited circumstances."); *Dunn v. Tutera Group*, 181 F.R.D. 653, 656 (D. Kan. 1998) ("[I]t is within the discretion of the district courts to consider several factors" when a "defendant claims that plaintiff failed to name it in the EEOC charge.").

On the first factor, plaintiff never argues he could not ascertain the Board had played some role in the discriminatory conduct when he filed his EEOC charge naming only KCKCC on the cover page. But he argues discovery is needed to show the Board had notice of his claims and to determine the level of the Board's awareness and involvement in the retaliatory conduct. Doc. 25 at 7–8. And, plaintiff contends, the other three *Romero* factors favor him. Specifically, plaintiff argues the Board and KCKCC have a sufficient identity of interest to satisfy the notice requirement, the Board cannot demonstrate any actual prejudice from its omission from the cover page, and the Board's action to terminate plaintiff demonstrates his "relationship with KCKCC was controlled by the Board." *Id.* at 6–8. Defendants' Reply again argues that plaintiff was required to separately name the Board as a party to his charge. Doc. 31 at 3. They argue the Board never received sufficient notice to "allow them to participate in the investigation of the charge and conciliation as an individual entity" and "[n]o additional discovery is necessary when the charge speaks for itself regarding the allegations and the sole respondent named therein." *Id.*

The court agrees with plaintiff. While defendants note that the Board is a single entity, they never meaningfully dispute that the Board and KCKCC may have sufficient identity of interest so that separately naming the Board was not required to exhaust administrative remedies for claims against the Board. In *Dunn v. Tutera Group*, for example, our court considered

whether a plaintiff whose EEOC charge named the discriminating employee and nursing home as respondents, but did not name the companies that owned the nursing home, had failed to exhaust administrative remedies for a suit against the owner companies. 181 F.R.D. at 658. The plaintiff claimed that owners should have received notice of the charge and that "discovery is essential to determine" if the owners had sufficient identity of interest with the named nursing home. The court applied the *Romero* factors at summary judgment and concluded that "[w]hile plaintiff could have named [at least one of the owners] in her EEOC charges . . . [p]laintiff has produced evidence" that "suggests a similarity of interests" between defendants "for the purposes of agency investigation and conciliation, such that summary judgment is not appropriate." *Id.* Here, particularly at this stage of the case, plaintiff has alleged facts that, accepted as true and viewed in the light most favorable to plaintiff, support a finding that the Board and KCKCC have interests sufficiently similar that it was unnecessary to include the Board in the EEOC proceedings. *See, e.g.*, Doc. 4-1 at 3 (Compl. ¶ 13) (alleging Board employs the President of KCKCC), 5 (Compl. ¶ 30) ("Plaintiff was also designated as the Freedom of Information Officer for KCKCC by the Board."), 6–7 (Compl. ¶ 41) (board member was present during plaintiff's performance review), 7 (Compl. ¶ 43) (Board policy is to hire the president and delegate responsibility for hiring other employees to the president), 11 (Compl. ¶ 64) (KCKCC scheduled Board meeting and the Board voted to terminate plaintiff at this meeting); *see also Dunn*, 181 F.R.D. at 656 (explaining that, on a motion to dismiss, the court "may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of her theory of recovery that would entitle her to relief"). This second factor favors plaintiff.

On the actual prejudice factor, defendants argued only that the Board did not have requisite notice to allow them to participate in the EEOC investigation. In *Dunn*, the owner companies of the nursing home argued they never received notice of plaintiff's EEOC charge until plaintiff filed suit. *Dunn*, 181 F.R.D. at 658. But, "[w]ithout discovery into the EEOC investigation and conciliation attempts," the court determined it was "unknown whether" these defendants had "actual or constructive notice." *Id.* at 658–59. And, even if the defendants could have raised valid defenses in the EEOC investigation, the court explained that nothing prevents them from raising the same defenses in the lawsuit. *Id.* So, the court declined to grant summary judgment where it was "unclear that [the defendants] have suffered actual prejudice because they were not named in the EEOC charge." *Id.* at 658. Here, drawing reasonable inferences in plaintiff's favor—as the court must at this stage—plaintiff likely could muster facts to support a finding that the Board had the requisite notice. As explained below, though the Board was not named on the front of the charge as the discriminating party, the summary attached to the charge includes allegations against the Board. It is plausible that when KCKCC received notice of the charge, the Board also was notified of the charge and its contents. It is also plausible that any actions taken by KCKCC when it received notice were done in the interests of KCKCC and its governing Board, resulting in no actual prejudice to the Board. And, any defenses the Board could have raised still are available now. At this stage of the proceedings, the Board has not shown actual prejudice sufficient to warrant dismissal of the Title VII claims against it.

This leaves the final factor. The Board never has disputed whether it, as the unnamed party for the EEOC charge, represented to plaintiff that his relationship with the Board was through KCKCC, the named party. The allegations indicate the Board exercised control over plaintiff's employment with KCKCC and, indeed, voted to terminate that employment.

The court concludes three of the *Romero* factors favor plaintiff and plaintiff is entitled to the opportunity to muster factual evidence to support his assertion that he exhausted his administrative remedies for his Title VII claims against the Board. Defendants have not met their burden, before discovery, to show plaintiff's failure to name the Board as a respondent on the face of the EEOC charge amounts to a failure to exhaust administrative remedies.

Also, liberally construing the EEOC charge, the Complaint's allegations about the Board's conduct falls within the reasonable and likely scope of the investigation that logically would follow from the allegations in the charge. *See Smith*, 904 F.3d at 1164–65; *see also Romero*, 615 F.2d at 1311 (recognizing a possibility of "narrow exceptions to the strict requirement that each defendant must have been specifically named as the respondent in the EEOC charge," particularly "where the defendant was informally referred to in the body of the charge"); *Dunn*, 181 F.R.D. at 658 (explaining "[d]ismissal is not mandated when plaintiff has informally referred to defendant in the charge" or where the *Romero* factors favor the plaintiff). The summary attached to the EEOC charge alleges that members of the Board, aspiring to remove him from his position with KCKCC, solicited "anonymous complaints" to raise "false and unsupported allegations" against plaintiff. Doc. 4-1 at 30; *see also id.* at 7 (Compl. ¶ 46). The charge also alleges that when plaintiff notified KCKCC of his "intent to pursue an EEOC claim," the Board held a special meeting and plaintiff was terminated the next day. *Id.* at 31; *see also id.* at 11 (Compl. ¶¶ 64, 65) (alleging the Board voted to terminate plaintiff's employment). Based on this language from the charge, plaintiff has a plausible basis for mustering some factual support to show he has exhausted his administrative remedies for claims against the Board. The charge establishes the scope of the investigation "so the employer knows exactly what allegations to defend itself against." *Smith*, 904 F.3d at 1166. Here, viewing the facts and

making reasonable inferences in the light most favorable to plaintiff, his allegations in the EEOC charge involved conduct both by KCKCC and its governing Board, and dismissal of the Board is not mandated where the Board was informally referred to in the charge.

In sum, the court concludes plaintiff has pleaded sufficiently that he exhausted his administrative requirements for both KCKCC and the Board at this motion to dismiss stage of the proceedings. The *Romero* factors weigh in plaintiff's favor. And, liberally construing the EEOC charge, the allegations against the Board would fall within the scope of the EEOC's investigation. *Cf. Robles*, 2012 WL 2359423, at *4 (dismissing claims on a motion to dismiss for failure to exhaust administrative remedies where plaintiff's EEOC charge did not name certain defendants or "mention [the defendants] anywhere in the narrative portion of the charges" and the *Romero* factors all weighed in favor of the defendants). The court thus denies defendants' motion to dismiss the Title VII claims against the Board.

### B. Count IV, VI, and VII (Breach of Contract, Estoppel, and Unjust Enrichment) as Asserted Against Dr. Vietti

Defendants next move to dismiss Counts IV, VI, and VII to the extent plaintiff asserts those claims against Dr. Vietti. These claims assert breach of contract, estoppel, and unjust enrichment claims based, at least in part, on the Employment Contract. Doc. 20 at 6–9. Defendants argue dismissal is appropriate because Dr. Vietti was not a party to the Employment Contract. It was signed before she became KCKCC's President and was an agreement between KCKCC and plaintiff. And, plaintiff already asserts these claims against KCKCC. Defendant argues that no facts can support plausible claims against Dr. Vietti individually and, even if plaintiff had sued her in a representative capacity, it would be unnecessary. So, defendants contend, plaintiff has failed to state claims upon which relief can be granted against Dr. Vietti, meriting dismissal under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's Response

concedes plaintiff doesn't assert the breach of contract, estoppel, and unjust enrichment claims against Dr. Vietti individually. Doc. 25 at 12. The court thus grants defendants' motion to dismiss Count IV (Breach of Contract), Count VI (Estoppel), and Count VII (Unjust Enrichment) asserted against Dr. Vietti.

### C. Count V (Negligence) as Asserted Against All Defendants and as Asserted Against Dr. Vietti

Count V's negligence claim alleges that the Board "has a duty to provide oversight and to develop/approve budgets for KCKCC," including budgeting for the salaries and benefits in the Employment Contract. Doc. 4-1 at 21 (Compl. ¶ 136). Plaintiff also alleges that defendants "have a duty to take the necessary administrative steps related to the contracts that [d]efendants execute, including" the Employment Contract. *Id.* (Compl. ¶ 138). And, he asserts that if the "Employment Contract is deemed invalid . . . [d]efendants breached their duties by failing to take the certain administrative steps related to the Employment Contract and by failing to exercise oversight [over] the operations of KCKCC." *Id.* at 22 (Compl. ¶ 141).

Defendants move to dismiss this claim as asserted against all defendants, arguing plaintiff failed to satisfy Kansas law's mandatory notice requirement before bringing a tort claim against a municipality and its employee. Defendants contend dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) because the court lacks subject matter jurisdiction where plaintiff has not provided this notice. Defendants also move to dismiss this negligence claim as asserted against Dr. Vietti under Federal Rule of Civil Procedure 12(b)(6), arguing she was not a party to the Employment Contract and thus owed no duty to plaintiff. The court addresses each argument, in turn, below.

### i. Subject Matter Jurisdiction Over Negligence Claim as Asserted Against All Defendants

In Kansas, when a claim asserted against a municipality or one of its employees falls within the scope of the Kansas Tort Claims Act, Kan. Stat. Ann. §§ 75-6101–75-6120, the claimant must give the municipality—which includes a community junior college and its board of trustees—written notice before filing suit on that claim. Kan. Stat. Ann. §§ 12-105a(a); 12-105b(d). Section 12-105b(d) directs a party planning to assert such a claim against a municipality or its employee to file notice "with the clerk or governing body of the municipality." This notice must provide: (1) the claimant's name and address, and, if he has an attorney, his attorney's name and address; (2) "a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of;" (3) the name and address of any known employee involved; (4) "a concise statement of the nature and extent of the injury claimed to have been suffered;" and (5) the monetary damages requested. *Id.* § 12-105b(d). One complies with this pre-suit disclosure if the filed notice substantially complies with these requirements. *Id.*

"Substantial compliance means compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Sleeth v. Sedan City Hosp.*, 317 P.3d 782, 790 (Kan. 2014) (citation omitted). A notice suffices if it provides the municipality "what it needs for a full investigation and understanding of the merits of the claims advanced." *Id.* at 791 (internal quotation marks and citation omitted). "This is achieved when the notice advises the municipality of the time and place of the injury, affords the municipality an opportunity to ascertain the character and extent of the injury sustained, and allows for the early investigation and resolution of the claim disputes." *Id.* "The legislative intent of [§] 12-105b is to insure that a municipality is made aware of a claim against it . . . and has ample time to investigate the claim

before being sued on that claim." *Doe v. USD No. 237, Smith Ctr. Sch. Dist.*, No. 16-cv-2801-JWL-TJJ, 2017 WL 3839416, at *4 (D. Kan. Sept. 1, 2017) (James, Mag. J.) (internal quotation marks and citation omitted).

After providing the requisite notice, the claimant may not file suit until after he "has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." Kan. Stat. Ann. § 12-105b(d). A plaintiff's failure to comply with this statutory notice prerequisite "leaves a court without subject matter jurisdiction." *Sleeth*, 317 P.3d at 785, 792–94; *see also Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1276 (D. Kan. 2011) (explaining the notice requirement under Kan. Stat. Ann. § 12-105b is "a mandatory prerequisite for a court to exercise jurisdiction" over negligence claims asserted against a municipality or its employees).

Defendants' motion did not specify whether they were asserting a facial or factual attack on subject matter jurisdiction. Defendants asserted that plaintiff never provided the required notice but did not provide any evidentiary support for this assertion. Doc. 20 at 9. Plaintiff's Response addressed both the sufficiency of the Complaint's allegations about notice and asserted additional arguments about how he satisfied the notice requirement, also without any evidentiary support for these arguments. Defendant's Reply focused on factually attacking subject matter jurisdiction.

The court addresses the parties' subject matter jurisdiction arguments in three parts. One, the court considers whether the Complaint on its face sufficiently alleges plaintiff provided defendants the required notice. Two, the court considers whether defendants' factual attack establishes the court lacks subject matter jurisdiction. As the court explains below, on the current evidentiary record the court cannot determine as a matter of law that defendants never

received the required notice under Kan. Stat. Ann. § 12-105b(d). Three, to assist in narrowing the dispute, the court considers the parties' arguments about whether the EEOC charge provided certain elements required for notice.

### a. Facial Attack on Subject Matter Jurisdiction

Defendant argues plaintiff failed to provide the required notice under Kan. Stat. Ann. § 12-105b(d) to the clerk or governing board of KCKCC, so the court lacks subject matter jurisdiction over the negligence claim. Doc. 20 at 9. Plaintiff, without citing any law to support his assertion, argues that simply pleading "that he satisfied all administrative prerequisites" is "enough to survive a motion to dismiss." Doc. 25 at 8.

True to his argument, plaintiff indeed alleges that he "has satisfied all administrative prerequisites to the institution of this action." Doc. 4-1 at 4 (Compl. ¶ 21). The notice requirement in § 12-105b(d) "is a condition precedent to suit against a municipality." *Cano v. Denning*, No. 12-2217-KHV, 2013 WL 322112, at *8 (D. Kan. Jan. 28, 2013) (citation omitted). And, under Fed. R. Civ. P. 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." *See also Doe*, 2017 WL 3839416, at *4 (explaining § 12-105b's notice requirements "must be pled in compliance with Fed. R. Civ. P. 9(c)"); *Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1301–02 (D. Kan. 2005) (same); *Peterson v. Brownlee*, 314 F. Supp. 2d 1150, 1153 (D. Kan. 2004) (concluding allegation in complaint that "'[a]ll conditions precedent to filing this action have been met'" satisfies the pleading requirement under Rule 9(c), and "is sufficient to withstand a motion to dismiss"); *Bell v. Kan. City, Kan. Housing Auth.*, 992 P.2d 1233, 1238 (Kan. 1999) (explaining under Kansas's similar pleading statute, Kan. Stat. Ann. § 60–209(c), a general allegation that all conditions precedent have been performed is sufficient). So, plaintiff

adequately has pleaded that he satisfied the condition precedent—*i.e.*, the written notice required under Kan. Stat. Ann. § 12-105b—which suffices to survive a motion to dismiss facially attacking a Complaint's allegations on subject matter jurisdiction. But defendants' motion appears to assert a factual attack on subject matter jurisdiction, not a facial attack. The court next considers the sufficiency of defendants' factual attack.

### b. Factual Attack on Subject Matter Jurisdiction

"When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). "A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations *in spite of its formal sufficiency* by relying on affidavits or any other evidence properly before the court." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (emphasis added). When confronted with such an attack, a plaintiff then must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* (internal quotation marks and citation omitted).

Here, neither party provides any evidentiary support for their jurisdictional arguments about the negligence claim. Defendants assert that plaintiff never provided the required notice. Plaintiff disputes the substance of defendants' argument, contending that he substantially complied with Kan. Stat. Ann. § 12-105b(d) and provided the five categories of information required for notice through the EEOC charge and settlement negotiations conducted both before and after the charge was filed. Doc. 25 at 9–10. He also contends he "should be entitled to

conduct discovery" on the issues whether defendants "were on notice of [his] negligence claims and whether [he] substantially complied" with the statute. *Id.* at 10. Defendants, on the other hand, argue the settlement discussions "dealt with a potential resolution of [p]laintiff's claims in the charge and his alleged breach of contract claim[,]" but not any negligence claims. Doc. 31 at 4. Defendants also contend that the EEOC charge "did not provide notice of wrongful conduct that would fall within the Kansas Tort Claims Act." *Id.* They argue that plaintiff "did not include sufficient factual information" in the charge "that would lead anyone to believe a claim under the Kansas Tort Claims Act was pending or [provide notice of] the nature and extent of his injuries." *Id.* at 5.

Given this vacuum of information, the court can't evaluate the merits of defendants' jurisdictional argument. And, the court agrees that discovery may sharpen the parties' arguments and inform the court's analysis. *See Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1270 (D.N.M. 2011) ("[I]t is not uncommon for courts to allow jurisdictional defects to be cured by granting leave to amend the complaint, or to postpone ruling on a jurisdictional issue until the parties have had the opportunity to conduct discovery and present evidence on that issue" (internal quotation and citation omitted)). While the EEOC charge was attached to the Complaint and the court may consider it, the settlement discussions and any other fact-based arguments that may show that plaintiff satisfied—or failed to satisfy—the notice requirement set forth in the Kansas statute are not. In short, some facts needed to determine subject matter jurisdiction are not included in or attached to the Complaint or any evidentiary submission by defendants or plaintiff.

Since defendants filed their motion to dismiss, the parties have proceeded with discovery, which continues. The evidentiary support the parties intend to use to support their arguments

should be available now, or at least by the discovery deadline which is currently set for July 20, 2020. Because these matters are not fully developed in the current evidentiary record, the court cannot conclude that defendants never received the required notice under Kan. Stat. Ann. § 12-105b(d). And, the court denies defendants' motion to dismiss plaintiff's negligence claim under Fed. R. Civ. P. 12(b)(1), without prejudice to defendants' right to raise this issue again with a more fulsome factual record. But, because the EEOC charge is available in the record, the court, in the next subsection, briefly addresses the parties' arguments about whether the contents of the EEOC charge provided certain elements required by Kansas law for notice.

### c. EEOC Charge as Notice

The parties dispute whether the EEOC charge provided certain elements required for notice. As explained above, these arguments don't permit the court to decide the question whether the requisite notice was provided because plaintiff contends that evidence outside the EEOC charge helps establish that he fulfilled his notice obligation. But, the court believes that an interim analysis of the arguments to date may advance the parties' future efforts to litigate this dispute. So, the court considers whether the EEOC charge provided notice that substantially complies with § 12-105b's notice requirement.

The five categories of information that the requisite notice must provide are: (1) the claimant's name and address, and, if he has an attorney, his attorney's name and address; (2) "a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of;" (3) the name and address of any known employee involved; (4) "a concise statement of the nature and extent of the injury claimed to have been suffered;" and (5) the monetary damages requested. Kan. Stat. Ann. § 12-105b(d).

Plaintiff argues that the EEOC charge provided "every element of notice required under [Kan. Stat. Ann. § 12-105b]" except one.  Doc. 25 at 9.  Plaintiff concedes the EEOC charge did not discuss the fifth element—his alleged monetary damages.  *Id.*  But plaintiff asserts defendants were notified of the damages requested through "settlement discussions and the EEOC process."  *Id.*; *cf. Sleeth*, 317 P.3d at 789, 792 (assuming for purposes of the court's analysis whether a wrongful death claim was prematurely asserted in court that the statutory requirements for giving notice could be achieved through "multiple writings," but not ultimately deciding whether "multiple writings can suffice to comply with the statute").  Indeed, any argument that the EEOC charge alone provided all that is required for notice is unpersuasive.  "[S]ubstantial compliance . . . is not achieved when a claimant's notice fails to provide any statement of monetary damages."  *Sleeth*, 317 P.3d at 785; *id.* at 789, 791 (holding where no statement of damages is included, plaintiff has not substantially complied).  So, plaintiff must rely on other submissions to support his argument that he provided all the elements of the requisite notice.

Defendants disagree with plaintiff's assertion that the EEOC charge provided all required information except the damages requested.  Defendants do not challenge the first element— claimant's name and address.  Instead, they argue elements two, three, and four were missing. Defendants assert that the charge never discussed any duty to implement a contract or take administrative steps for the Employment Contract.  Doc. 31 at 4.  And, they contend, the charge's allegations about the Employment Contract never mention Dr. Vietti.  *Id.*  They argue that plaintiff "did not include sufficient factual information" in the charge "that would lead anyone to believe a claim under the Kansas Tort Claims Act was pending or [provide notice of] the nature and extent of [plaintiff's] injuries."  *Id.* at 5; *see also* Kan. Stat. Ann. § 12-105b(d)

(requiring a "concise statement of the factual basis of the claim," the name and address of any employee involved, and "a concise statement of the nature and the extent of the injury claimed to have been suffered").

For the second and forth elements—a concise statement of the factual basis of the claim and the nature and extent of the injury suffered—Section 12-105b(d) does not "expressly require" a plaintiff to "list the . . . specific causes of action" he "may assert under . . . Kansas law . . . ." *Doe*, 2017 WL 3839416, at *4–5. Often, plaintiffs will identify the specific tort they allege defendants have committed. *See, e.g.*, *id.* at *1 (describing § 12-105b notice identifying specific tort causes of action plaintiffs intended to assert against defendant school district, including, among others, negligent supervision, hiring, and retention of employees and negligent infliction of emotional distress); *Sleeth*, 317 P.3d at 785 (letter to hospital threatening suit and specifying a wrongful death claim). But the case law on this point is settled: the statutory language requires only the "factual basis for the claim" and not "the legal theory behind the claim." *Doe*, 2017 WL 3839416, at *6 (internal quotation marks and citation omitted); *see also Mick v. Brewer*, No. 93-1509-JTM, 1997 WL 225908, at *6 (D. Kan. Apr. 18, 1997) (where notice was provided for other, similar claims based on same facts, plaintiff also provided adequate notice for negligent infliction of emotional distress claim because statute does not require plaintiff to specify legal theory so long as plaintiff provides "notice of a claim and the underlying facts"). In sum, it is enough if plaintiff provides facts that give the defendant "the ability to investigate the claim and determine the level of damages . . . ." *Doe*, 2017 WL 3839416, at *6 (internal quotation marks and citation omitted).

Still, as our court has explained, the notice must give sufficient "factual information [about] the injury and damages that [plaintiff] allegedly suffered" for the claims "actually

asserted in court," not just other claims that existed. *Cont'l Coal, Inc. v. Cunningham*, 553 F. Supp. 2d 1273, 1286 (D. Kan. 2008) (holding on summary judgment that court lacked subject matter jurisdiction over plaintiff's state law claim for tortious interference with business expectancies because plaintiff failed as a matter of law to comply substantially with § 12-105b where plaintiff sent a letter to defendant asserting plaintiff "reserve[d] all of its rights and claims for damages and relief arising from the [defendant's] tortious and unlawful conduct," but did not specifically "refer to any interference with [plaintiff's] business relations or note any injury to its business or business relationships").

If a plaintiff fails to include facts to support the claim asserted in court, the municipality has received "no opportunity to ascertain the character and extent of the injury suffered or to adequately determine its possible liability, and . . . thus fail[s] to assure every reasonable objective of the statute." *Id.* (internal quotation marks and citation omitted); *see also Richard v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, Nos. 09-1278-MLB-KMH, 10-1042-MLB-KMH, 2012 WL 4794588, at *5–6 (D. Kan. Oct. 9, 2012) (holding where plaintiff's notice "complained of the use of excessive force" by one deputy and "said the sheriff in his official capacity was responsible for it," but never made any "factual statements remotely suggesting plaintiff was complaining of any wrongful or tortious conduct" by the sheriff, county, or any other deputies, plaintiff had not provided required notice necessary to bring negligent hiring, failure to properly train and supervise, negligent infliction of emotional distress, and other tort claims against these defendants). While a claimant is not required to "spell out its legal theories," the notice must at least describe circumstances that "suggest a factual basis for claims that are advanced in a subsequent lawsuit." *Richard*, 2012 WL 4794588, at *6. The court thus considers whether the EEOC charge here supplied sufficient factual information to provide defendants the ability to

investigate a potential negligence claim (and plaintiff's associated injuries) and to evaluate their potential liability.

The EEOC charge described how plaintiff had entered into the Employment Contract with KCKCC and asserted the college's then-President had offered plaintiff the contract and then signed it. Doc. 4-1 at 30–31. But, after operating under its terms for more than a year, KCKCC unilaterally declared the contract invalid and claimed it was unaware of the agreement. *Id.* at 31. Then, KCKCC took away certain benefits agreed to in the Employment Contract. *Id.* After the Board held a special meeting, plaintiff was terminated and "KCKCC has refused to cash out [his] earned and accrued leave time" that other employees typically receive at the end of their employment. *Id.*

The Complaint explains plaintiff's negligence claim is asserted in the event the Employment Contract is deemed invalid, because he, as the employee, had "no duty to ensure that his employer performs certain administrative steps related to the Employment Contract" offered to him. *Id.* at 22 (Compl. ¶ 139). Instead, he alleges, defendants had a duty to exercise oversight over KCKCC's operations and take necessary administrative steps for the employment contracts they offer. *Id.* (Compl. ¶ 141). Defendants contend that, because the EEOC charge did not make similar allegations about defendants' duties, the charge does not provide the facts necessary to apprise the municipality of a potential negligence claim.

The court concludes the facts alleged in the EEOC charge provided sufficient factual basis to give notice of a potential negligence claim against KCKCC and its Board. Plaintiff's injuries stem from KCKCC acting to declare his contract invalid and deny him benefits under the Employment Contract, including actions taken after KCKCC or the Board terminated his employment. Plaintiff contends this was wrongful conduct. The scope of the investigation into

plaintiff's allegations about breach of contract naturally would include circumstances attendant to the contract's formation and the parties' disagreement over its validity. It is reasonable to expect plaintiff would assert alternate legal theories for his injuries and damages where defendants dispute the contract's validity. Defendants' arguments supporting the contract's invalidity are based on the failure to take certain requisite steps, *e.g.*, such as securing appropriate approvals when the contract was signed. But, plaintiff and KCKCC operated under the terms of the agreement for more than a year—a factual circumstance suggesting some carelessness by KCKCC and its Board, who had employed and paid plaintiff based on the terms of the Employment Agreement they now claim they didn't know to exist. Thus, for the negligence claim asserted against the Board and KCKCC, the court concludes the facts alleged in the EEOC charge provided sufficient information to "advise[] the municipality of the time and place of the injury, afford[] the municipality an opportunity to ascertain the character and extent of the injury sustained, and allow[] for the early investigation and resolution of the claim disputes." *Sleeth*, 317 P.3d at 791.

In stark contrast, the EEOC charge does not provide any facts to put defendants on notice of a potential negligence claim against Dr. Vietti. The EEOC charge never references Dr. Vietti or asserts any wrongful conduct by her in connection with the Employment Contract. *See Richard*, 2012 WL 4794588, at *7 (explaining where notice apprises defendants of injuries but fails to alert them "to any possible claim that wrongful actions" by those defendants causing the injuries, the municipality could not have adequately investigated or understood the merits of the claim or properly assess its liability). When discussing the Employment Contract, the charge mentions that it was "offered and signed" by the President. Doc. 4-1 at 31. It does not refer to Dr. Vietti anywhere by name. *See* Kan. Stat. Ann. § 12-105b(d) (explaining the notice should

give the name and address of any employee involved in the claim). And, as the Complaint explains, Dr. Givens was the college President when the contract was signed. *Id.* at 6 (Compl. ¶ 37). Also, the EEOC charge asserts no facts that would indicate plaintiff expected a future college President to take action to validate a previously signed employment agreement, either before or after KCKCC declared it invalid. Plaintiff now argues Dr. Vietti was negligent by not taking that action. Doc. 25 at 12–13 (arguing that Dr. Vietti "repeatedly reaffirmed the existence and validity of" the Employment Contract and allowed plaintiff to rely on it and breached a duty to act to make it valid). Plaintiff's position is that, once Dr. Vietti became President and his supervisor, she "had a duty to take the necessary administrative steps to make [plaintiff's] Employment Contract with KCKCC valid," but she failed to act. *Id.* at 13. But, to the extent plaintiff relies on the EEOC charge alone for purposes of providing notice to defendants of this claim against Dr. Vietti, the charge provides none of the information needed for a full investigation and understanding of that claim's merits. *See Sleeth*, 317 P.3d at 791. It does not provide any facts showing wrongful conduct by Dr. Vietti or name Dr. Vietti as someone who was involved in the claim.

On the current record, the court cannot conclude as a matter of law that defendants never received the required notice under Kan. Stat. Ann. § 12-105b(d). The court thus denies defendants' motion to dismiss the negligence claims under Fed. R. Civ. P. 12(b)(1) at this juncture. But this decision does not prejudice defendants' right to reassert the argument (if jurisdiction remains in dispute) with accompanying evidentiary support. *See Holt*, 46 F.3d at 1003 (outlining a court's discretion to permit "affidavits, other documents, and [conduct] a limited evidentiary hearing," if necessary to decide a factual attack and resolve disputed "jurisdictional facts").

If defendants choose to renew their motion to dismiss the negligence claim and the facts

they rely on are disputed, the court directs the parties to provide proposed dates for an

evidentiary hearing to the Deputy Clerk of the court, Megan Garrett, at

KSD_Crabtree_Chambers@ksd.uscourts.gov.  Alternatively, defendants may choose to reassert their

arguments in a future summary judgment motion.[1]

### ii.    Failure to State a Negligence Claim upon which Relief Can Be Granted Against Dr. Vietti

Defendants separately seek dismissal of the negligence claim against Dr. Vietti under

Fed. R. Civ. P. 12(b)(6).  Doc. 20 at 7–8.  "A plaintiff in a negligence action must prove four

elements:  a duty owed to the plaintiff, breach of that duty, causation between the breach of duty

and the injury to the plaintiff, and damages suffered by the plaintiff."  *Shirley v. Glass*, 308 P.3d

---

[1]    As part of its analysis, the court has considered whether it must analyze the parties' arguments about subject matter jurisdiction as a summary judgment motion or Rule 12(b)(6) motion.  But, as the Tenth Circuit has explained, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F. 3d at 1003.  A "jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  *Id.*

Here, whether plaintiff provided defendants the requisite notice under § 12-105b is not intertwined with the merits of the claim that defendants were negligent.  *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (explaining subject matter jurisdiction is not intertwined with the merits where resolution of the jurisdictional question does not require resolution of an aspect of the substantive claim).  *But cf. Bell*, 992 P.2d at 1241 (explaining when district court dismissed case *on a motion to dismiss for failure to state a claim upon which relief can be* granted (*i.e.*, not a motion based on lack of subject matter jurisdiction) based on evidence outside the pleadings, it was "in effect, a summary judgment" process and was "not appropriate where the parties ha[d] not completed discovery" and "additional discovery could have uncovered a notice of claim to the [defendant] sufficient to constitute substantial compliance" under § 12-105b(d)); *Peterson*, 314 F. Supp. 2d at 1153–54 (for a *non-jurisdictional prerequisite* to filing suit, a court "may not consider" on a motion to dismiss disputes about the "factual validity" of an averment that conditions precedent have been met, and declining to convert the motion into a motion for summary judgment before the factual issues had been fully developed).  The Kansas Supreme Court has held that notice under § 12-105b is a requirement "before a court has subject matter jurisdiction over a claim." *Sleeth*, 317 P.3d at 794.  Now that the parties have had the opportunity to conduct discovery, the court will allow them to present evidence on this subject matter jurisdiction issue if they choose.  And, in doing so, the court may treat the parties' motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and consider evidence outside the pleadings without converting it to a summary judgment motion.  *See Sizova*, 282 F.3d at 1326–28 (explaining that even assuming the issue involves subject matter jurisdiction, a court should allow discovery on the factual issues before resolving the issue).

1, 6 (Kan. 2013) (citation omitted).  Defendants argue plaintiff has not pleaded a duty owed to plaintiff by Dr. Vietti.

"Under Kansas law, a plaintiff must show the existence of a duty to recover for negligence, and whether a duty exists is a question of law."  *Lopez-Aguirre v. Bd. of Cty. Comm'rs of Shawnee Cty., Kan.*, No. 12-2752-JWL, 2013 WL 1668239, *11 (D. Kan. Apr. 17, 2013); *see also Reardon ex rel. Parsons v. King*, 452 P.3d 849, 855 (Kan. 2019) ("[T]he existence of a duty . . . is actually a question of law rather than one of fact." (citation omitted)).  "Whether the duty has been breached is a question of fact."  *Honeycutt v. City of Wichita*, 836 P.2d 1128, 1136 (Kan. 1992) (internal quotation marks and citation omitted).  "Actionable negligence first requires that the alleged wrongdoer owe a legally recognized duty of due care to the injured party, and the wrongdoer must then breach that duty in a way causing the injury."  *Estate of Randolph v. City of Wichita*, __P.3d__, No. 118,842, 2020 WL 288978, at *8 (Kan. Ct. App. Jan. 21, 2020).  "Lack of due care typically entails doing something a reasonable person would not do under the circumstances or failing to do something a reasonable person would do."  *Id.*

While defendants move to dismiss the negligence claim against Dr. Vietti under Rule 12(b)(6), they focus their arguments on one issue:  whether the Complaint's language alleges any duty owed by Dr. Vietti to plaintiff.  Because they contend the Complaint alleges no duty in the first place, they never argue any purported duty doesn't exist as a matter of law.  As explained in the previous section, plaintiff argues that once Dr. Vietti became President and his supervisor, she "had a duty to take the necessary administrative steps to make [plaintiff's] Employment Contract with KCKCC valid," but she failed to act.  Doc. 25 at 13.

The court has not located any common law or statutory legal basis for such a duty and is skeptical whether Kansas recognizes a legal duty to take administrative steps under these circumstances. *Cf. N.T. v. Taco Bell Corp.*, 411 F. Supp. 3d 1192, 1194–97 (D. Kan. 2019) (explaining a plaintiff may rely on a section of the Restatement (Second) of Torts adopted by Kansas or Kansas case law to show existence of a legal duty, and holding Kansas never has recognized a duty to sell franchises in a manner that protects employees from a risk of sexual harassment or assault so plaintiff's attempt to "repackage" harassment and assault claims as a negligent failure of the franchisor to protect a franchisee's employees must be dismissed); *Capitol Bus Sols., LLC v. Konica Minolta Bus. Sols. USA, Inc.*, No. 08-2027-JWL, 2008 WL 2761307, at *2, 5 (D. Kan. July 14, 2008) (explaining a plaintiff must direct the court to what "independent legal duty" exists "to support tort liability for negligence" and where plaintiff cannot establish a legal basis "independent of the parties' contractual relationship" to support tort liability the claim will be dismissed, and holding that Kansas law does not recognize a legal duty to "collect, remit and account for payments due to" plaintiff because the source of this duty arises or is imposed by contractual agreement between the parties, not by law); *Jeanes v. Bank of Am., N.A.*, 191 P.3d 325, 329–30 (Kan. Ct. App. 2008) (explaining "whether a tort and contract claim can be brought in the same case is a question of law" and that in some circumstances, like an attorney-client relationship, both a contractual relationship and a relationship with "legal duties imposed by law" may exist). At present, plaintiff hasn't directed the court to any authority supporting the legal conclusion that Dr. Vietti owed plaintiff a duty that would allow recovery for negligence. But then again, defendants never challenge that proposition. Instead, the parties dispute merely whether the Complaint, on its face, alleged the existence of some duty owed by Dr. Vietti. So, whether a legally recognized duty exists is not properly before the court on the

current motion to dismiss, and the court considers only whether the Complaint alleges a general duty owed by Dr. Vietti.[2]

The Complaint alleges that defendants declared the Employment Contract invalid because certain required administrative steps were not taken after it was signed—specifically, securing Board approval for the Employment Contract—and that defendants had "a duty to take the necessary administrative steps related to the contracts" that they "execute." Doc. 4-1 at 21–23 (Compl. ¶¶ 134, 138, 141, 151). Because Dr. Vietti was not the Acting President when the Employment Contract was signed, defendants argue plaintiff has not pleaded any facts supporting a finding that Dr. Vietti owed plaintiff a duty arising from signing the contract. Doc. 20 at 7–8; Doc. 31 at 5–6. Defendants contend plaintiff "admits Dr. Vietti was not involved in the execution of the Employment Contract[,]" so he "cannot show" that she had any "duty to take the administrative steps related to the contract." Doc. 31 at 6.

Plaintiff, on the other hand, argues that when Dr. Vietti began serving as the college's Acting President and became plaintiff's supervisor, she "had a duty to take the necessary administrative steps to make [plaintiff's] Employment Contract with KCKCC valid," but she failed to act. Doc. 25 at 13. He contends the Complaint does not allege that Dr. Vietti was negligent when the contract was signed, but alleges only that she is liable for her later failure to act. *Id.* And, plaintiff argues, Dr. Vietti owed him this duty to act to make the contract valid, particularly where she previously had "allowed [him] to rely on the fact that his Employment Contract was valid." *Id.*

---

[2]     To assert a negligence claim plaintiff must at some point at or prior to trial provide the court legal authority on the question whether the alleged duty is a legal duty recognized by Kansas law. *See Capitol Bus Sols., LLC*, 2008 WL 2761307, at *5; *see also Lopez-Aguirre*, 2013 WL 1668239, at *11 (concluding "no duty arose as a matter of law" despite plaintiff's argument that defendants had a "duty to protect decedent from harm").

At this stage, accepting the allegations in the Complaint as true and making reasonable inferences in the light most favorable to plaintiff, the court concludes plaintiff has pleaded facts sufficiently alleging that Dr. Vietti owed plaintiff a duty. The Complaint alleges Dr. Vietti's duties included supervising plaintiff. Doc. 4-1 at 3, 4 (Compl. ¶¶ 13, 26). Plaintiff alleges that Board policy, and "the norm within the community college sector" is for the Board to "delegate[] responsibility for hiring all other employees to the President and rel[y] on the President *to ensure that* personnel policies, practices, *and employee agreements are implemented and followed*." *Id.* at 7 (Compl. ¶ 43) (emphasis added). The Complaint also alleges that Dr. Vietti knew about plaintiff's Employment Contract and treated it as a valid one. *Id.* (Compl. ¶ 42) ("Dr. Vietti reaffirmed the existence of the Employment Contract and the benefits contained therein when she informed plaintiff that his phone/data allowance and automobile allowance would not be cut because they were 'in his contract' while KCKCC was removing non-contractual stipends and benefits provided to other employees."); *see also id.* at 20 (Compl. ¶ 128) ("Defendants were aware of the existence of the Employment Contract and their repeated and consistent conduct reaffirmed the existence of the Employment Contract."). But, plaintiff alleges, KCKCC then declared the Employment Contract invalid and has failed to provide certain benefits agreed to in it. *See, e.g.*, *id.* at 10–13 (Compl. ¶¶ 56, 59, 61, 63, 70, 72, 74). Plaintiff alleges "[d]efendants have asserted that [p]laintiff's Employment Contract is not valid because [d]efendants failed to take certain administrative steps related to the Employment Contract." *Id.* at 21 (Compl. ¶ 134). And, plaintiff asserts, "[d]efendants have a duty to take the necessary administrative steps related to the contracts that [d]efendants execute, including [p]laintiff's Employment Contract." *Id.* (Compl. ¶ 138).

Because plaintiff alleges that the college President is tasked with ensuring employment agreements are implemented and followed, a reasonable factfinder could infer that—when plaintiff's employment contract was declared invalid because necessary administrative steps were not taken—Dr. Vietti breached a duty to ensure those steps were taken so that the parties could implement the agreement properly. Though Dr. Vietti was not the President who signed the Employment Contract, she was the Acting President when questions about its implementation were raised and when KCKCC stopped complying with it. Accepting the Complaint's allegations as true and drawing reasonable inferences from them in plaintiff's favor, plaintiff plausibly has alleged that it was the President's duty to take these steps—when the agreement was first signed and when a deficiency in implementation was discovered. And, a reasonable interpretation of the alleged duty in Count V is that the college's President owed this duty not only for contracts signed by the current President but also for contracts KCKCC has signed in the past if issues arise.

But, if plaintiff claims Dr. Vietti owed him a duty to take steps to implement the Employment Contract before defendants declared it invalid, the Complaint does not allege sufficient facts to support a claim on that theory. This theory would require plaintiff to allege that when a new supervisor is hired—as Dr. Vietti was here—the supervisor has a duty to go back and review all employment contracts entered by her employer before it hired the new supervisor and ensure all necessary administrative steps were taken to implement those pre-existing contracts. Plaintiff alleges only that the President's duties include ensuring that "employee agreements are implemented and followed" and that defendants "have a duty to take the necessary administrative steps related to the contracts" they sign. Doc. 4-1 at 7, 21 (Compl. ¶¶ 43, 138).

Based on the facts alleged in the Complaint, Dr. Vietti initially satisfied these duties for the Employment Contract, *i.e.*, the Complaint doesn't allege a duty that was breached causing injury to plaintiff because Dr. Vietti treated the contract as properly implemented by her predecessor and Dr. Vietti ensured that it was followed when she became Acting President. The Complaint never alleges that Dr. Vietti knew or believed plaintiff's Employment Contract was invalid. Instead, the Complaint indicates Dr. Vietti followed the contract and permitted plaintiff to retain certain benefits provided by its terms. *Id.* at 7 (Compl. ¶ 42) ("Dr. Vietti reaffirmed the existence of the Employment Contract and the benefits contained therein when she informed plaintiff that his phone/data allowance and automobile allowance would not be cut because they were 'in his contract' while KCKCC was removing non-contractual stipends and benefits provided to other employees."). And, plaintiff alleges he received the benefits under the agreement until defendants improperly terminated them. *Id.* at 6 (Compl. ¶ 40).

In sum, the court grants in part and denies in part defendants' Rule 12(b)(6) motion on the negligence claim against Dr. Vietti. It dismisses Count V's negligence claim to the extent it alleges that Dr. Vietti owed plaintiff a duty to take steps to implement the Employment Contract before defendants declared it invalid. That negligence claim, if indeed plaintiff asserts a claim of that nature, fails to state a claim on which the court properly could grant relief. Otherwise, the court denies defendants' motion against this negligence claim because, viewing the facts and making reasonable inferences in the light most favorable to plaintiff as the court must at this stage, the Complaint alleges a duty owed by Dr. Vietti to plaintiff. Finally, the court defers the legal question whether this duty is one recognized by Kansas law. The parties haven't joined that issue and they haven't briefed it. So, the answer to that question—one that plaintiff must address before trial begins—is a question for another day.

### D. Count VIII (Kansas Wage Payment Act) as Asserted Against Dr. Vietti

Finally, defendants move to dismiss Count VIII—a Kansas Wage Payment Act, Kan. Stat. Ann. §§ 44-313–44-327 ("KWPA") claim—to the extent the claim is asserted against Dr. Vietti, arguing she is not an employer subject to liability under that Act. So, they assert, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff brings his KWPA claim under Kan. Stat. Ann. § 44-315. This statute requires employers to pay an employee's earned wages within a certain time frame after the employee leaves the employment relationship. *Id.* § 44-315(a). If the employer's violation is willful, the employer is liable for the wages and a penalty. *Id.* § 44-315(b). "Whether an employer willfully failed to pay wages is a question of fact." *Coma Corp. v. Kan. Dep't of Labor*, 154 P.3d 1080, 1081 (Kan. 2007) (citing *Holder v. Kan. Steel Built, Inc.*, 582 P.2d 244, 249 (Kan. 1978)).

The KWPA defines "employer" as "any individual, . . . corporation, . . . or other organization, . . . the state of Kansas or any department, agency or authority of the state, any city, county, school district or other political subdivision, municipality or public corporation and any instrumentality thereof, employing any person." Kan. Stat. Ann. § 44–313. An "officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of K.S.A. 44-314 or 44-315" also "may be deemed the employer for purposes of" the KWPA. *Id.* § 44-323(b); *see also Kansas ex rel. McCain v. Erdman*, 607 P.2d 78, 79–80 (Kan. Ct. App. 1980) (holding in suit by employee against corporation and individual who was its sole stockholder, director, and officer with "exclusive responsibility for disbursement of funds," the individual was personally liable because evidence established that he knowingly and willfully failed to pay the wages due).

Defendants argue plaintiff "makes no specific allegations [about] intentional conduct by Dr. Vietti with respect to his wage claim," and merely refers to defendants generally. Doc. 20 at 10. So, they contend, the court should dismiss plaintiff's claim against Dr. Vietti because plaintiff does not allege she is an officer who knowingly permitted the employer to violate the KWPA. *Id.*

Plaintiff contends dismissal of the KWPA claim "at this phase of the case is inappropriate" because "issues of fact [remain] about whether or not Dr. Vietti meets the definition of 'employer' in the KWPA and whether the failure to pay wages was willful." Doc. 25 at 10. He argues the Complaint's allegations suffice to state a claim against Dr. Vietti because the Complaint alleges that she was his supervisor, that defendants meet the definition of employer, and that defendants knowingly and willfully failed to pay his earned wages. *Id.* at 11.

Both parties cite *Fotouhi v. Mobile FR Solutions, Inc.* to support their positions. No. 15-2587-JWL, 2015 WL 3397205 (D. Kan. May 26, 2015). In *Fotouhi*, a terminated chief executive officer sued his former company and an individual who was the company's president and chairman. *Id.* at *1. The president had terminated plaintiff's employment, and when plaintiff contacted the president to request his severance pay and incentive bonuses, he refused to pay "any and all amounts owed to plaintiff." *Id.* at *2. The president moved to dismiss the only claim asserted against him—a KWPA claim—arguing it failed to state a claim for relief. *Id.* at *2–3. He argued that he was not an "'employer' for purposes of the KWPA." *Id.* But, the complaint alleged that the president "was the person solely responsible for all decisions regarding the payment of plaintiff's wages" and was "the person who refused to pay plaintiff the wages due to him." *Id.* at *4. The court held, "If these allegations are proved, the KWPA provides for [the president's] liability." *Id.* The court explained that § 44-323(b) "expressly

provides for corporate officer liability when the officer aids a corporation in violating the provisions requiring payment of earned wages to employees," so the court declined "at this juncture" to dismiss the claim against the president. *Id.*

Here, defendants contend plaintiff "did not and cannot allege that Dr. Vietti had the final decision-making authority over employment decisions at KCKCC." So, they contend based on *Fotouhi*, she cannot qualify as an "employer" under the definition used by the KWPA. They cite a Kansas statute that purportedly gives authority to determine the compensation and terms of KCKCC's employees to the Board. Doc. 31 at 6. But the Kansas legislature long ago repealed the statute they cite—Kan. Stat. Ann. § 72-201, *repealed by* Laws 1951, ch. 395, § 74. And, *Fotouhi* determined that the allegations in the complaint that the president was "solely responsible for all decisions regarding the payment of plaintiff's wages" were sufficient to allege liability under the Kansas statute, which requires the person to "have 'charge of the affairs of an employer . . . .'" *Fatouhi*, 2015 WL 3397205, at *4 (quoting Kan. Stat. Ann. § 44-323(b)). But it did not conclude every plaintiff seeking to assert a KWPA claim must allege "the supervisor or officer had the final decision making capacity and exclusive control over whether a payment would be made" to survive a motion to dismiss, as defendants suggest is necessary. Doc. 31 at 6.

The Complaint's allegations here suffice to allege a plausible claim for Dr. Vietti's liability under the KWPA. The Complaint alleges Dr. Vietti was President of KCKCC and her duties included supervising plaintiff. Doc. 4-1 at 3, 4 (Compl. ¶¶ 13, 26). Plaintiff alleges that Board policy, and "the norm within the community college sector" is for the Board to "delegate[] the responsibility for hiring all other employees to the President and rel[y] on the President *to ensure that* personnel policies, practices, *and employee agreements are implemented and followed*." *Id.* at 7 (Compl. ¶ 43) (emphasis added). The Complaint also alleges Dr. Vietti

"informed [p]laintiff that his phone/data allowance and automobile allowance would not be cut because they were 'in his contract' while KCKCC was removing non-contractual stipends and benefits provided to other employees." *Id.* (Compl. ¶ 42).

In other sections of the Complaint, plaintiff refers to KCKCC's actions, without referencing Dr. Vietti. Plaintiff alleges, "KCKCC has taken away the health insurance benefit provided under the Employment Contract and has failed to provide the additional salary for full premiums as set out in Section 3(a) of the Employment Contract." Doc. 4-1 at 10 (Compl. ¶ 59). And, "KCKCC has refused to cash in [p]laintiff's earned and accrued vacation leave time." *Id.* at 11 (Compl. ¶ 61). "Plaintiff received a paycheck from KCKCC that purported to be a final paycheck . . . that was significantly below the salary reflected in his Employment Contract . . . ." *Id.* at 12 (Compl. ¶ 70). He alleges it was KCKCC who arbitrarily and improperly recalculated his salary and withheld benefits, and "KCKCC still owes [p]laintiff the amount of $54,866.63 plus applicable penalties under the Kansas Wage Payment Act . . . ." *Id.* at 12–13 (Compl. ¶¶ 71–77).

Later in Count VIII, the Complaint alleges that plaintiff brings the KWPA claim against "all defendants" and that "[d]efendants are an 'employer' under the Act." *Id.* at 25 (Compl. ¶ 162). He asserts that the Act "imposes personal liability on officers and agents of the employer who knowingly allow the employer to violate the law." *Id.* (Compl. ¶ 164). And, he asserts he notified defendants of "the incomplete payment of wages" and that they "knowingly and willfully failed to pay" them. *Id.* (Compl. ¶¶ 165, 166).

Accepting the allegations in the Complaint as true and making reasonable inferences in plaintiff's favor as the court must at this stage, plaintiff has pleaded sufficient facts to state a plausible KWPA claim against Dr. Vietti. In short, he has alleged sufficient facts that—if

supported with admissible evidence—could permit a rational trier of fact to infer Dr. Vietti controlled the compensation and other benefits plaintiff received under the Employment Contract. And, while he refers to "defendants" in the KWPA section of his Complaint, he specifically refers to the Act imposing personal liability on officers before stating he provided defendants notice and they failed to pay. A reasonable inference from providing "defendants" notice in this context is that plaintiff also alleges that he provided Dr. Vietti the notice of incomplete payment and she knowingly permitted KCKCC's failure to pay plaintiff.

KWPA claims often are asserted against both an organizational defendant and its president. *See, e.g.*, *Traffas v. Bridge Capital Corp.*, No. 93-3322, 46 F.3d 1152 (Table), 1995 WL 18277, at *3 (10th Cir. Jan. 18, 1995) (concluding summary judgment in favor of president and director of the corporation was appropriate where plaintiff had not shown he knowingly permitted a violation of the Act and thus he was not personally liable for the unpaid wages); *Scott v. Black*, No. 07-2177-JAR, 2007 WL 9724309, at *4–5 (D. Kan. Aug. 6, 2007) (considering whether breach of contract claim against corporation and KWPA claim against corporation and its vice president and general manager should be remanded to state court, where defendant argued wage claim against officer—whose presence destroyed diversity jurisdiction— and corporation was meritless, and concluding court could not determine as a matter of law claim against officer would fail and remanding to state court); *Ingham v. Digital Sols., Inc.*, No. 98-2486-JWL, 2000 WL 126920, at *1 (D. Kan. Jan. 19, 2000) (considering whether statute of limitations had expired for plaintiff's claim alleging corporation and its president willfully refused to pay earned wages); *Holder v. Kan. Steel Built*, 582 P.2d 244, 246, 249 (Kan. 1978) (finding no error in jury's determination that employer "knowingly failed to pay" and "willfully violated the act" where employee sued corporation and individual who was the president,

director, and controlling stockholder); *Coma Corp. v. Kan. Dep't of Labor*, 154 P.3d 1080, 1081 (Kan. 2007) (explaining Kansas Department of Labor determined that both corporation and its president owed plaintiff wages plus interest for a KWPA violation). At this motion to dismiss phase of the case, plaintiff adequately has alleged facts to support plausible claim and he is entitled to present evidence for his KWPA claim against Dr. Vietti.

As the statute explains, for liability to attach to Dr. Vietti plaintiff must show she "has charge of the affairs of [the] employer" and "knowingly permit[ted] the employer to engage in" a violation of § 44–315. Kan. Stat. Ann. § 44-323(b). While *Fotouhi* and similar cases set the bar at a high level, the court cannot say at this juncture as a matter of law that plaintiff cannot possibly marshal facts sufficient to show Dr. Vietti had "charge of the affairs" of KCKCC. *Cf. Holder*, 582 P.2d at 246, 249 (finding no error in jury's determination that employer "knowingly failed to pay" and "willfully violated the act" where employee sued corporation and individual who was the president, director, and controlling stockholder); *Erdman*, 607 P.2d at 79–80 (holding in suit by employee against corporation and individual who was its sole stockholder, director, and officer with "exclusive responsibility for disbursement of funds," individual was personally liable because evidence established that he knowingly and willfully failed to pay the wages due). The court thus denies defendants' motion to dismiss the KWPA claim against Dr. Vietti.

## IV.        Conclusion

The court grants in part and denies in part defendants' motion to dismiss all claims asserted against Dr. Vietti, and certain claims asserted against the Board and KCKCC. The court grants defendants' motion to dismiss Count I (Religious Discrimination), Count II (National Origin Discrimination), and Count III (Retaliation) as asserted against Dr. Vietti. The court

denies defendants' motion to dismiss these Title VII claims as asserted against the Board. The court grants defendants' motion to dismiss Count IV (Breach of Contract), Count VI (Estoppel), and Count VII (Unjust Enrichment) as asserted against Dr. Vietti. The court denies defendants' motion to dismiss Count V (Negligence) for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), without prejudice to refiling with accompanying evidentiary support. The court grants in part and denies in part defendant's motion seeking dismissal under Fed. R. Civ. P. 12(b)(6) of the negligence claim asserted against Dr. Vietti. Finally, the court denies defendant's motion to dismiss the KWPA claim asserted against Dr. Vietti.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Kansas City Kansas Community College, the Board of Trustees of Kansas City Kansas Community College, and Dr. Jacqueline Vietti's Motion for Partial Dismissal (Doc. 19) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 31st day of March, 2020, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**